```
 1                UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW JERSEY
 2                 Civil Action No. 08-1281    RECEIVED

 3        ------------------------------              MAY - 7 2009

 4        In Regard to the Matter of:              JOEL SCHNEIDER
                                                U.S. Magistrate Judge
 5        Bayside State Prison              OPINION/REPORT
          Litigation                            OF THE
 6                                           SPECIAL MASTER
          MONTE WILLIAMS
 7
                      -vs-
 8                                              REC
          WILLIAM H. FAUVER, et al,
 9
                    Defendants.                  MAY - 7
10        ------------------------------
                                                JOEL SCH
11                                           U.S. Magistr

12

13

14              *        *        *        *

15            TUESDAY, APRIL 14, 2009

16              *        *        *        *

17

18

19

20   BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER

21

22

23

24

25
```

```
 1
 2
 3
 4              Transcript of proceedings in the above
 5   matter taken by Theresa O. Mastroianni, Certified
 6   Court Reporter, license number 30X100085700, and
 7   Notary Public of the State of New Jersey at the
 8   United States District Court House, One Gerry Plaza,
 9   Camden, New Jersey, 08102, commencing at 2:07 PM.
10
11
12
13
14
15
16
17
18              MASTROIANNI & FORMAROLI, INC.
19         Certified Court Reporting & Videoconferencing
20                  251 South White Horse Pike
21                   Audubon, New Jersey 08106
22                         856-546-1100
23
24
25
```

```
 1
 2  A P P E A R A N C E S:
 3
 4        LOUGHRY & LINDSAY, ESQUIRES.
          BY:   LAWRENCE W. LINDSAY, ESQUIRE
 5        330 MARKET STREET
          CAMDEN, NEW JERSEY 08102
 6        856-968-9201
          ATTORNEYS FOR THE PLAINTIFFS
 7
 8
          RODNEY D. RAY, ESQUIRE
 9        32 NORTH BLACK HORSE PIKE
          BLACKWOOD, NEW JERSEY  08012
10        856-232-3337
          856-232-4561
11        ATTORNEYS FOR THE PLAINTIFFS
12
13        ROSELLI & GRIEGEL, PC
          BY:   MARK ROSELLI, ESQUIRE
14              - and -
          BY:   JAMES LAZZARO, ESQUIRE
15        1337 STATE HIGHWAY 33
          HAMILTON SQUARE, NEW JERSEY  08690
16        609-586-2257
          ATTORNEYS FOR THE DEFENDANTS
17
18
19
20
21
22
23
24
25
```

```
 1                 JUDGE BISSELL:  I'm reopening
 2   proceedings in the case of Monte Williams, docket
 3   number 08-1281.
 4                 This opinion/report is being issued
 5   pursuant to the directives of the Order of Reference
 6   to a Special Master and the Special Master's
 7   Agreement and the guiding principles of law which
 8   underlie this decision to be applied to the facts
 9   upon which it is based as set forth in the jury
10   instructions in the Walker and Mejias jury charges to
11   the extent applicable to the allegations of
12   Mr. Williams.
13                 As finalized after review under Local
14   Civil Rule 52.1, this transcript will constitute the
15   written report required under paragraph seven of the
16   Order of Reference to a Special Master.
17                 Monte Williams testified that he
18   arrived in the tents on or about the the 24th of July
19   of 1997.  He testifies to a series of events that
20   occurred to him, and I'll either quote or summarize
21   as the case may be the testimony in those instances.
22                 Beginning at page nine of the
23   transcript of his testimony on May 9th, 2008, he
24   talks about SOGs coming into the tents and beating
25   him on his legs with night sticks during the first
```

1   week of August of '97 and that there were repeated
2   unannounced visits into the tents by SOG officers to
3   beat inmates for no reasons over a considerable
4   period of time.
5               For instance, at page 11, line 23 he
6   says: "Well, what I can remember is on numerous
7   occasions they would just come unannounced, of
8   course, and just run into the tents and just start
9   beating and hitting people. Yelling and screaming,
10  stuff like that. And that happened a number of
11  times."
12              He also testified to a second event
13  occurring to him at page 13. Talks about essentially
14  a game of private tug-of-war for fun, so to speak.
15  One officer told him to get up and the other officer
16  told him to get down. And so that under each
17  circumstance, as he said, obviously I would be
18  disobeying one of them. So he would get up and
19  another officer would say I told you to get down and
20  would pull him and vice versa. He testified to that
21  game taking place with him. He also testified to
22  getting a stiff neck from sitting in the gym on the
23  day they were there for the search of the tent areas.
24              I find specifically that even if
25  accepted, that is not actionable. Nothing aggravated

```
 1   or cruel or unusual about requiring the inmates to
 2   sit for that length of time while a search of the
 3   tents was taking place.
 4              Then at page 22 he talks of an alleged
 5   encounter on a bathroom break.  He said an officer
 6   was taking him to a bathroom break from the tents.
 7   He recounted it as follows:
 8              "As we started to walk to the bathroom,
 9   the officer asked for my ID card, which I gave him.
10   And he told me that I had a lot of nerve coming out
11   of the tent so close to count time.  And that if
12   anybody else did that, that he was going to have them
13   defecate or whatever they needed to do on the floor
14   in their tent, and that I would be responsible for
15   cleaning it.
16              "We went on to the bathroom and the
17   officer told me that you have 25 seconds to come out
18   of there or else I'm going to beat -- and he used
19   some profanity there.
20              Answer continues.
21              "So I went in and I went as quick as I
22   could, knowing that after count we would have a
23   bathroom break and I would be able to finish.  So I
24   went as fast as I could and came out.  And the
25   officer told me, I'm not done with you yet.
```

1          "He grabbed my left wrist and the back
2  of my shirt and shoved me from the top tier of the
3  stairs.  It had been raining.  The prison doesn't
4  allow you to keep your boots or street clothing and
5  stuff like that."
6          Talks about having slipped as a result
7  of being thrown down the stairs and hitting his knee
8  and elbow on the asphalt.
9          Then he adds:  "And I started to get
10 up.  He told me to stay down there and say a prayer
11 for the officer that got killed, which I did."
12         Walking back to the tent he talks about
13 four other officers coming with a bag of trash and
14 garbage at which point he was made to tell them, "I
15 love Bayside," an effort at humiliation, although not
16 physical conduct.
17         He identified an Officer McConnell as
18 having been the perpetrator of this event in the
19 course of the bathroom break.  But Officer McConnell
20 was called here to testify, and he did so.  And,
21 frankly, McConnell completely refuted that recounting
22 of what occurred on the occasion of the bathroom
23 break.  He did it with an explanation that is
24 inherently credible.  Namely, that he, himself, was a
25 brand new probationary officer assigned in this case

1  to a temporary assignment for the purpose of making
2  this individual escort from the tents into the
3  bathroom location in back.  Particularly under the
4  level of scrutiny that would be applied to him on
5  this date, which it seems was on or about August 4th,
6  the date that Officer Baker was buried, it would make
7  no sense whatsoever for Officer McConnell, a new
8  probationary officer on a temporary assignment in an
9  area where as the record reveals he had no contact
10 with any of these particular inmates before, to have
11 taken it upon himself, in the high likelihood that he
12 would have been seen or otherwise detected, to
13 mistreat this inmate in this fashion.  In short, it
14 would have ruined his career before it even got
15 started.  So it just doesn't make any inherent sense.
16            In addition, with regard to the
17 beatings recounted by Mr. Williams concerning his
18 legs and the attack of the SOG officers in the tents,
19 despite a detailed answer to interrogatory number
20 four, this particular type of misconduct against him
21 is not even mentioned.  He did talk about the
22 bathroom incident, he talked about being pulled up
23 and down by other officers, he talked about sitting
24 in the awkward position in the gym, but none of the
25 supposed repeated beatings on his legs.

1        Accordingly, I find that he's failed to
2   sustain his burden of proof with regard to those
3   beatings because the interrogatory answer is much
4   closer in time and despite being lengthy in detail
5   make no mention of it whatsoever.
6        The events ascribed to the bathroom
7   break and Officer McConnell are unproven and, in
8   fact, effectively refuted by the testimony of Officer
9   McConnell himself.  And accordingly, these indeed
10  cast considerable doubt on the accuracy of his
11  recounting in terms of being pulled in each direction
12  by various officers, presumably right in plain view
13  of others in this so-called get-down-get-up,
14  get-down-get-up scenario.
15       Once again, the third incident with
16  regard to the stiff neck in the gym is not itself
17  actionable.
18       Under all the circumstances, I find
19  that he's failed to sustain his burden of proof with
20  regard to any of these items based on, in some
21  instances, a lack of credible evidence, in other
22  cases the direct refutation of his allegations, and
23  finally, the impact of the absence of credibility on
24  certain items upon the other item that he recounted.
25       So under all of those circumstances, I

1  find that he's failed to sustain his burden of proof
2  by a preponderance of the evidence of any of the
3  alleged assaults upon him.
4           Finally, although not every item of
5  evidence has been discussed in this opinion/report
6  all evidence presented to the Special Master was
7  reviewed and considered.
8           For the reasons set forth above, I
9  recommend in this report that the district court
10 enter an order and judgment of no cause for action
11 with regard to Monte Williams.
12          (Hearing Adjourned)

1                    C E R T I F I C A T E

2

3       I, Theresa O. Mastroianni, a Notary Public and

4  Certified Shorthand Reporter of the State of New

5  Jersey, do hereby certify that the foregoing is a

6  true and accurate transcript of the testimony as

7  taken stenographically by and before me at the time,

8  place, and on the date hereinbefore set forth.

9       I DO FURTHER CERTIFY that I am neither a

10 relative nor employee nor attorney nor counsel of any

11 of the parties to this action, and that I am neither

12 a relative nor employee of such attorney or counsel,

13 and that I am not financially interested in the

14 action.

15

16

17

18

19     _____
       *J O Mastroianni*
20     Theresa O. Mastroianni, C.S.R.
       Notary Public, State of New Jersey
       My Commission Expires May 5, 2010
21     Certificate No. XI0857
       Date: April 16, 2009

22

23

24

25